YOUNG *v.* ANDERSON

No. 43038          April 27, 1964          163 So. 2d 253

Robert D. Coit, Meridian, for appellant.

Gipson, Gipson & Wiley, Meridian, for appellee.

PATTERSON, J.

This suit for property damages originated in the County Court of Lauderdale County, Mississippi, as the result of an automobile accident on U. S. Highway 45 a few miles south of the City of Meridian. A hearing was had in the County Court, resulting in a verdict for defendant. The cause was appealed to the Circuit Court of such County, and was there affirmed. From these adverse judgments, plaintiff appeals here.

The appellant's first assignment of error — "The trial court erred in commenting on the testimony and orally charging the jury as to the weight of the evidence" — is well taken. The evidence discloses this accident occurred about six o'clock in the evening of June 17, 1960. Plaintiff's automobile was being driven by one Wilson at the time with the knowledge and consent of the owner. Wilson, a minor and not a party to this suit, was driving alone enroute to fill an engagement with a young lady. While so driving in a southerly direction on Highway 45 near the Springhill Road intersection, Wilson met and collided with the

automobile of the defendant, Anderson, who was driving in a northerly direction.

The plaintiff's version of the accident is that the defendant cut over into his lane of traffic, thus causing the collision. The defendant's version is that the plaintiff cut over into his lane of traffic, thus causing the collision. There was, therefore, a conflict in the evidence, the resolution of which should have been left to the determination of the jury under proper instructions. The following colloquy took place in the course of the trial and out of which arose the question to be here determined. Mr. Anderson, the defendant below, was on the stand on direct examination when these questions were asked:

"Q. Now, Mr. Anderson, did you hear Mrs. Vandiver ask Mr. Wilson what happened, or words to that effect?

"A. I don't think I heard her — I only heard what he told me.

"Q. Well, what did he tell you?

"A. Like I said, when I got up about the time I come to, I seen the ambulance there, the red lights, and they were still holding me up and according to my recollection, wanted me to go to the hospital. I thought to myself, I want to know what in the world happened, and as soon as I got that in my mind, I wouldn't go. I stayed until I could get to and see what it was all about, and I got to where I could walk around and it seemed like I walked between the cars myself, but I might not but I know in all bounds and reason I remember going practically to the front of my car, there was a Negro there, a couple of fellows holding me and this boy was there walking around too.

"Q. That is Mr. Wilson you are talking about?

"A. Mr. Wilson — and I asked him, 'Son, what in the world did you mean?'

"Q. What did he say?

"A.  He said, 'Well, I don't know — I was looking back and when I turned back, the sun blinded me.'

"Q.  In other words, he was looking back and then he turned his eyes back to the — his eyes back, the sun blinded him?

"A.  That is what he told me. Said there is a house out there and I believe he said something about knowing the boys that lived there or something, and he was just looking back and he did say that he turned back and the sun was blinding him and he said, 'That's all I know.' "

And later, while the same witness was being cross-examined, the following transpired:

"By Mr. Coit:

"Q.  Mr. Anderson, which way does that highway run where this wreck happened?

"A.  North and South, is that what you mean?

"Q.  Yes, sir, that's what I mean.

"A.  North and South, approximately, close to it.

"Q.  Close to it, within a matter of a few degrees, very close, not East or West or Northeast or Southwest?

"A.  Yes, North and South approximately.

"Q.  And you often had occasion to travel that highway in the late afternoon had you not?

"A.  Yes, traveled it both ways, I imagine a thousand times.

"Q.  Have you ever had the sun in your eyes at 6:00 o'clock when you were looking south at 6:00 o'clock in the afternoon?

By Mr. Gipson:

"We object to that, he was going North, he wasn't going South.

By Mr. Coit:

"If it please the Court, he just testified that he traveled at all times at all hours. The testimony through the trial is that he traveled once and twice a day every day of his life or over most of his life.

"By Mr. Gipson:

"It's not involved in this law suit.

"By Mr. Coit:

"If it please the Court, I submit that it is very much involved as to whether or not the sun would be in the eyes of a man headed almost due South at 6:00 o'clock in the afternoon.

"By the Court:

"There's no doubt about that, it would be on Highway 11 and Highway 45 both if you are traveling going south in the late evening. I live down Highway 11 and the sun is right in my eyes and it runs Northeast to Southwest. I will let him answer, go ahead."

Sec. 1530, Miss. Code 1942, Anno., provides, among other things, as follows: "The judge in any cause, civil or criminal, shall not sum up or comment on the testimony, or charge the jury as to the weight of evidence; but at the request of either party he shall instruct the jury upon the principles of law applicable to the case. . . ."

Our courts have always carefully guarded against allowing the trial judge to testify or to comment upon the weight and value of the evidence, to sum up the evidence, or to comment on the testimony. The case of Sivley v. Sivley, 96 Miss. 137, 51 So. 457, holds in part in regard to this point as follows:

"When Mr. Eldridge was on the stand, testifying as to the facts . . . , there was an objection made to the admission of his testimony by attorneys for the plaintiff, and the Court, in ruling on this objection and admitting the testimony for the consideration of the jury, made this comment: 'Let it in. It has nothing to do with the case. It did not amount to anything, and did not have anything to do with the issue in this cause.' If the evidence was competent, it should have been admitted by the court without comment as to its weight, or what weight it should have with the jury. We think

this was reversible error, in view of the fact that the testimony was admitted and was competent on the very main issue in the case."

In Collins v. State, 99 Miss. 47, 54 So. 665, a criminal case but applicable here, the Court made the following comments:

"The common law, since trial by jury was secured by Magna Charta, the twenty-sixth section of our Constitution, and various criminal statutes of this state, guarantee to a person charged with a crime a fair trial by an impartial jury. This guaranty is to every person, high or low, rich or poor, guilty or innocent. The appellant in this case was denied this right. Here we have the judge, in the presence of the jury before whom the appellant was to be tried, by the character of questions put to her, bringing her cause into contempt. We reiterate what the Court said in Green v. State, 53 South. 415: 'It is a matter of common knowledge that jurors, as well as officers in attendance upon court, are very susceptible to the influence of the judge. The sheriff and his deputies, as a rule, are anxious to do his bidding; and jurors watch closely his conduct, and give attention to his language, that they may, if possible, ascertain his leaning to one side or the other, which, if known, often largely influences their verdict. He cannot be too careful and guarded in language and conduct in the presence of the jury to avoid prejudice to either party. 21 Ency. P. and P. 994, 995, and notes. The court will not stop to inquire whether the jury was actually influenced by the conduct of the judge. All the authorities hold that, if they were exposed to improper influences, which might have produced the verdict, the presumption of law is against its purity; and testimony will not be heard to rebut this presumption. It is a conclusive presumption."

The judge's comment here — "There is no doubt about it, it would be on Highway 11 and Highway

both of you are traveling going south in the late evening. I live down Highway 11 and the sun is right in my eyes and it runs Northeast to Southwest. I will let him answer, go ahead.'' — not only amounts to a comment upon the testimony of Anderson, it corroborates it in regard to the sun being in a driver's eyes. It is also unsworn testimony on the part of the judge which precluded the defendant from a fair opportunity to offer evidence to the contrary, in that if such evidence had been offered, the jury would have been in the awkward position of overruling the judge if they in fact believed the other witnesses. In either event, corroboration or testimony, the defendant was deprived of a fair trial by the judge's comment. We hold this to be reversible error.

■■ ■ The next assignment of error, the granting of an instruction to the appellee which would attribute the negligence of the bailee to the bailor and in denying appellant's instruction to the converse, is not well taken. The case of Illinois Central Railroad Co. v. Paul Sims, 77 Miss. 325, 27 So. 527, made this comment upon the negligence of a gratitous bailee: ''Why the contributory negligence of a gratitous bailee, while using the property for the very purpose for which it was loaned, should not be imputed to the bailor who intrusted it to the bailee to be thus used, we are unable to see. There is the same privity of contract, in all essential features, as in bailment for hire, and as in engagements between principal and agent, and between master and servant.'' See also Kilgore v. Criddle, 243 Miss. 713, 139 So. 2d 870, to the same effect.

■■ ■ The next assignment of error of appellant is that the trial court erred in permitting testimony to be introduced concerning the appellee's injuries and hospitalization is well taken. The only issue before the court was that of property damage. The only purpose the testimony concerning personal injuries and hospi-

talization could have had was the sympathetic appeal it might have had upon the jury. Though not reversible error in itself, this comment is made since the cause must be retried.

The cause is reversed for the reasons hereinabove set forth and remanded for a new trial.

Reversed and remanded.

*Kyle, P. J., and Gillespie, McElroy and Rodgers, JJ.,* concur.