263 So.2d 754 (1972)
Kenneth STEWART
v.
STATE of Mississippi.
No. 46827.
Supreme Court of Mississippi.
May 29, 1972.
James G. McIntyre, John R. Poole, Jackson, for appellant.
A.F. Summer, Atty. Gen., by James W. Haddock, Sp. Asst. Atty. Gen., Jackson, for appellee.
*755 JONES, Justice:
In the Circuit Court of the First Judicial District of Hinds County, appellant was convicted of armed robbery and was sentenced to forty-five years in the penitentiary. He appeals, and we reverse and remand for another trial.
The evidence was sufficient to make a jury issue, and we will not go into the proof other than as may be necessary to explain our holding.
Tote-Sum Store No. 13 was robbed early on the morning of October 3, 1970, and several articles were found abandoned about a mile from the place of the robbery. Among these articles found was a pair of handcuffs which contained no identifying marks of any kind. A State's witness from another place of business was called to identify the handcuffs, and in response to a question as to whether he had seen them before stated that in his office was a plaque from which a pair of handcuffs had been stolen during a burglary of his business. He said these were either his or an identical twin  one or the other. Objection was made. The handcuffs were then introduced into evidence. We do not believe the State met its burden in the identification of the handcuffs; and reference to the previous burglary should not have been given, because there was no proof that the appellant was connected with the burglary of the witness' store.
Another witness said that she, with the appellant and David Pace, went to the *756 Tote-Sum Store No. 13 (the one robbed) around the first of October. She was asked for what purpose they went; and her answer was, "To break in." Objection was made and overruled. 29 Am.Jur.2d Evidence § 320 (1967); King v. State, 66 Miss. 502, 6 So. 188 (1889). This was merely a statement of "intent" not connected with armed robbery, the crime charged.
Robert Fields, an important witness for the appellant, testified that David Pace, a parolee, had told him, Fields, that he, Pace, committed this robbery. On cross examination by the State, the following exchange occurred relative to places the witness had worked:
Q... . Tell me about the different places you worked at.
A. I worked for Wolbrecht 
Q. Who?
A. Wolbrecht.
Q. Wolbrecht T.V.?
A. Yes sir.
Q. Is that the place that was burglarized while you were out there working for them?
BY MR. KENDALL: We Object.
BY THE COURT: Overruled.
A. They were burglarized about four times while 
Q. About four times while you were out there, weren't they?
A. Yes sir.
Q. Who else did you work for?
A. I worked for Rankin County Appliances.
Q. Were they burglarized while you were working out there?
A. I don't think so, no.
Q. Shortly afterwards, though, weren't they?
A. I don't think so.
Q. You don't know? Who else were you working for?
A. I worked for Miles Appliance Company.
Q. When were they burglarized?
A. I don't know exactly.
Q. About the time you were there, though, wasn't it? Shortly after you got fired, they were burglarized, weren't they?
A. I was fired 
Q. And then they were burglarized; is that right?
A. Yes sir.
Q. Where else did you work?
A. I worked for Cooper Towne.
Q. Cooper Towne?
A. Yes sir.
Q. When did you work for Cooper Towne?
A. Oh 
Q. October the 3rd, you were working out there, weren't you?
A. I think I was working 
Q. You know you were.
A. I was working there. I quit because they wouldn't pay me no more money.
Q. Where else have you worked?
A. I worked 
Q. Swan Electronics?
A. No, I never worked for them.
Q. But you used to go down there and buy stuff, didn't you?
A. Yes, sir. I fix T.V.'s, and 
Q. You looked around all down through there, didn't you?
*757 A. (No answer.)
Q. How many times were they burglarized?
A. I don't know.
Q. You don't know. Where else have you worked?
A. Worked for Earl Farris.
Q. Earl Farris?
A. Yes sir.
Q. Farris, out on North West Street, right?
A. Yes sir. I worked for him twice.
Q. And they were burglarized both times while you were there, weren't they?
A. Yes sir.
Q. Where else have you worked?
A. I worked for Dennis T.V.
Q. Dennis T.V.?
A. Yes sir. That's who I'm working for now.
Q. Have they been burglarized yet?
A. No sir.
BY MR. POOLE: If the Court please. This is being argumentative, and we object on that ground.
BY THE COURT: Sustained.
BY MR. TRAVIS: I'll withdraw the question.
BY MR. POOLE: That's a hollow symbol.
Q. Any other places you've worked?
A. No sir.
Q. Well, there was one more, wasn't it?
A. I worked for Harold Johnson on Bailey Avenue.
Q. Harold Johnson?
A. Yes sir.
Q. Do you remember when he was burglarized?
A. I wasn't working for him at the time.
Q. But it wasn't too long after you left there that he got burglarized; isn't that right?
A. I didn't burglarize him.
Q. I didn't say you did. I'm just making the point that everywhere you worked seemed to've (sic) been burglarized or get burglarized; right?
Section 1693 Mississippi Code of 1942 Annotated (1956) reads as follows:
Any witness may be examined touching his interest in the cause or his conviction of any crime, and his answers may be contradicted, and his interest or his conviction of a crime established by other evidence; and a witness shall not be excused from answering any question, material and relevant; unless the answer would expose him to criminal prosecution or penalty.
In 98 C.J.S. Witnesses § 515, p. 423 (1957), it is stated:
Cross-examination into the character of a witness may not be in the form of attempts to discredit him by means of sneers and innuendo. Hence it is improper, under the pretense of affecting the credibility of a witness, to propound interrogatories without any attempt or pretense to establish the truthfulness of the matters suggested by such inquiry and thereby cast insinuations on the witness... .
Where the question propounded is clearly for the purpose of creating in the minds of the jury a prejudice against the witness it is properly excluded. So, where the only purpose of the question is to insult or humilitate the witness, and thereby prejudice the jury, cross-examination *758 as to irrelevant matters, even though dealing with the character of the witness, is improper... .
There is no record that this man was ever even accused of any of the burglaries to which insinuation was made. This cross examination was clearly erroneous. Turberville v. State, 179 So. 340 (Miss. 1938); Johns v. State, 255 So.2d 322 (Miss. 1971).
It is shown that:
Defense counsel, in his opening statement to the jury, stated that the evidence would show that the State of Mississippi took suspicious circumstances and began to build a case; that they threatened and intimidated witnesses, even to the extent of putting them in jail. That thereupon, the trial judge stated: `That is improper argument. I put those witnesses in jail for their own protection.'
A motion for mistrial was made and overruled. The order of the court showed that the witnesses were in jail because they were about to leave the jurisdiction of the court. No proof was permitted outside the ex parte court order. We think that this comment by the court was unnecessary and prejudicial.
In Collins v. State, 99 Miss. 47, 54 So. 665 (1911), the Court asked defendant, a negro female, questions about one of her witnesses, which insinuated that this witness, who was a white male, had been to her house on a number of occasions. A conviction was reversed, with this Court stating:
The common law, since trial by jury was secured by Magna Charta, the twenty-sixth section of our Constitution, and various criminal statutes of this state, guarantee to a person charged with a crime a fair trial by an impartial jury. This guaranty is to every person, high or low, rich or poor, guilty or innocent. The appellant in this case was denied this right. Here we have the judge, in the presence of the jury before whom the appellant was to be tried, by the character of questions put to her, bringing her cause into contempt. We reiterate what the court said in Green v. State [97 Miss. 834], 53 So. 415: `It is a matter of common knowledge that jurors, as well as officers in attendance upon court, are very susceptible to the influence of the judge. The Sheriff and his deputies, as a rule, are anxious to do his bidding; and jurors watch closely his conduct, and give attention to his language, that they may, if possible, ascertain his leaning to one side or the other, which, if known, often largely influences their verdict. He cannot be too careful and guarded in language and conduct in the presence of the jury to avoid prejudice to either party... . The court will not stop to inquire whether the jury was actually influenced by the conduct of the judge. All the authorities hold that, if they were exposed to improper influences, which might have produced the verdict, the presumption of law is against its purity; and testimony will not be heard to rebut this presumption. It is a conclusive presumption.' (99 Miss. at 50, 51, 54 So. 665-666).
The above statement has been repeatedly reaffirmed by this Court. Pearson v. State, 254 Miss. 275, 179 So.2d 792 (1965); Young v. Anderson, 249 Miss. 539, 163 So.2d 253 (1964); Dickinson v. Koenig, 242 Miss. 17, 133 So.2d 721 (1961).
The bill of exceptions shows that the district attorney, in his final argument, pointed his finger at the defendant and said: "These laws are on the statute books to protect you, the public, from thieves, murderers, and robbers, such as this Defendant right here."
Objection was made and sustained, and a motion for a mistrial was overruled. Of course, an attorney has a right to argue a case on the facts; but in a criminal case, the district attorney should be careful not to indulge in personal abuse or vilification of the defendant and should not appeal to *759 passion and prejudice. Craft v. State, 226 Miss. 426, 84 So.2d 531 (1956).
Exception was taken to the claim that the court would not permit defense counsel to confer with two State witnesses who were incarcerated. If this were error, we do not see how prejudicial error thereasto could occur on retrial.
For the errors hereinbefore stated, this cause is reversed and remanded for a new trial according to law.
Reversed and remanded for a new trial.
RODGERS, P.J., and BRADY, SMITH and SUGG, JJ., concur.